ANTON ZARRESSELLER, Plaintiff in Error, v. THE PEOPLE, Defendant in Error.

ERROR TO MARION.

The act for the suppression of intemperance, approved February 12th, 1855, did not repeal prior laws, providing for the granting of licenses for selling spirituous liquors, and penalties for selling without such license.

No portion of this act was to take effect, until after the people should decide by a vote to adopt it.

In construeing a statute, the intention of the legislature will be considered; and to this end the whole act, the law existing prior to its passage, the motive for its passage, and the mischief to be remedied or avoided, will be carefully weighed.

An indictment which declares the offence to be, the selling " of one gill of spirituous liquors," being, &c., less than one quart, is sufficiently certain, under the license laws of this State.

An indictment for a violation of the license laws, which concludes "against the peace and dignity of the people of the State of Illinois," is within the meaning of the constitution.

In cases of misdemeanor, if the defendant waives a jury and puts himself upon the court for trial, he cannot assign for error that the court tried the issue.

THIS indictment was tried before PARRISH, Judge, (a jury being expressly waived,) at the September term, 1855, of the Marion Circuit Court. The defendant was found guilty. Motions for a new trial and in arrest of judgment were overruled.

Judgment was rendered for a fine and for costs. The opinion of the court furnishes a statement of the case.

G. KOERNER, for Plaintiff in Error.

J. S. ROBINSON, State's Attorney, for the People.

SKINNER, J. Anton Zarresseller was indicted in the Marion Circuit Court for selling spirituous liquor without license.

The indictment charges that Zarresseller, on the fourth day of April, 1855, at the county of Marion, one gill of spirituous liquor, the same being a less quantity than one quart, to one Tracy, unlawfully did sell.

The defendant appeared and moved the court to quash the indictment, on the ground that the act entitled, " an act for the suppression of intemperance, and to amend chapter 30 of the Revised Statutes," approved February 12, 1855, had repealed

the laws authorizing the granting of licenses to retail spirituous liquors, and the penalties for selling without such license. And also, for the reason that the indictment did not describe the kind of liquor sold, and did not conclude in the language of the constitution.

The first question is, did the act of 1855 repeal the laws regulating the retail of spirituous liquors, or any part of them? According to the principles laid down in the case of *Sullivan* v. *The People*, 15 Ill. 233, the laws authorizing the granting of licenses to sell spirituous liquors, and the laws providing penalties for selling without license compose one system, are dependant upon each other, and the repeal of the one would operate as a repeal of the other. If, then, the act of 1855 repealed the statutes authorizing the granting of licenses, it also repealed the penalties provided for selling without license. But we do not regard the act of 1855, as operative to affect these laws in any manner whatever.

The thirty-sixth section of the act of 1855, provides, that " all laws and parts of laws inconsistent with this act, shall be repealed when this act goes into operation; provided, that all prosecutions which shall have been commenced at the time this act goes into operation, shall be carried on to final judgment and execution as if this act had not been passed; provided, all laws authorizing the issuing or granting of licenses to sell spirituous or intoxicating or mixed liquors, shall be repealed from and after the date of the passage of this act."

The thirty-ninth section of the act provides that, " The foregoing provisions of this act shall take effect on the first Monday of July next; provided, if a majority of the ballots to be deposited as hereafter provided, shall be *against prohibition*, then this act shall be of no force or effect whatever.

The act then provides for submitting the adoption of the act to the people, to be determined by vote, and the mode of determining upon its adoption or rejection by the people. These two sections are apparently conflicting and repugnant; and it is insisted that the last proviso of the thirty-sixth section repeals the laws authorizing the granting of licenses, and providing penalties for selling without license. It is the duty of the court to construe these two sections together, and in connection with the whole act, and if practicable, reconcile the apparently opposite provisions, so as to give effect to each provision, and so make them result in an harmonious whole. The mere words of a proviso should not prevail against the clear object, scope and spirit of the act; the aim and end of construction being to ascertain the will of the legislature.

Taking these two sections together, and with a view to the

whole act, it seems to us that the legislature did not contemplate or intend that any part of them should have the force of law, until the adoption of the act by the people, and until the first Monday of July, 1855, in case of such adoption. If such was not the intention, why the provisions of the thirty-ninth section, that " the foregoing provisions (and which include the thirty-sixth section) of this act shall take effect on the first Monday of July next," and if a majority of the ballots should be against prohibition, " then this act shall be of no force or effect whatever " ?

It is to be recollected that the act provides for the vote upon the question of adoption of the act by the people, to be taken on the first Monday in June, 1855.

The same question may be asked with reference to the first clause of the thirty-sixth section : " All laws and parts of laws inconsistent with this act, shall be repealed when this act goes into *operation.*"

The laws inconsistent with that act, were the laws providing for the granting of licenses, and providing punishment for selling without license.

The second clause of the same section, provides that " all prosecutions which shall have been commenced at the time this act goes into operation, shall be carried on to final judgment and execution, as if this act had not been passed."

This clause would be absurd and inoperative, if the last clause of the section repealed the license system ; for by such repeal all right of prosecution would have been taken away ; there would no longer have been a law in existence to sustain such prosecutions. If the law creating the offence is repealed, no prosecution can be commenced, carried on, or punishment inflicted therefor. *Eaton* v. *Graham,* 11 Ill. 619.

To give consistency and effect to the several parts of these two sections, the last clause of the thirty-sixth section (notwithstanding the words,) must be understood as referring to the time when, and condition upon which, the act was to go into operation. And by the rules for construing statutes, provided by the 90th chapter of the Revised Statutes, the thirty-ninth section would prevail over the provision of the thirty-sixth section, repugnant thereto.

The 24th section of this chapter provides that, " If conflicting provisions be found in different sections of the same chapter, the provisions of the section which is last in numerical order shall prevail, unless such construction be inconsistent with the meaning of such chapter;" and the 36th section of the chapter makes this rule of construction general.

And the same rule seems to have been recognized at common

Zarresseller *v.* The People.

law. " If the latter part of a statute be repugnant to the former part thereof, it shall stand, and so far as it is repugnant, be a repeal of the former part; because it was last agreed to by the makers of the statute." Dwarris on Statutes 675.

But, aside from the reasons already given, we could not hold that the proviso of the thirty-sixth section repealed the license system and the penalties provided for its violation. The grand object in construing statutes is to ascertain the will of the legislature; and to accomplish this, courts not only will look to the provisions and language of the whole act, but to the law as it was at the time of the passage of such act, to the cause and motive of the act, and the mischief to be remedied or avoided thereby.

This act professes to be " for the suppression of intemperance," and its theory is, the prohibition of the manufacture and sale of intoxicating liquors, except for limited and specified purposes; and its mode of legislation is, a reference of the act to the people, at the polls, for their adoption or rejection.

The law, as it stood at the time of the passage of the act, regulated, and in a degree restrained, the retail of such liquors. One of its objects, as well as its effect, was to lessen the mischief sought to be suppressed by the act under consideration.

Can it be supposed, then, that at the date of this act, and when its final adoption was wholly hypothetical, the legislature intended to remove all restraint upon the free sale and use of such liquors, for any and every purpose, and thereby remove all barriers to intemperance? Or, can it be supposed that the legislature intended to open wide the flood-gates of evil, and hold this condition *in terrorum* over the people to influence their vote at the polls, upon the adoption of this act as the law of the land?

Such suppositions are not compatible with the integrity of the law-making power, and we are not disposed to entertain them.

The next question is, does the indictment describe the offence with sufficient certainty? A majority of the court hold the indictment sufficient in this respect, under our statute, and they are not without precedent in this conclusion. *Commonwealth v. Odlin*, 23 Pick. 275.

I am unable, however, to concur with the majority of the court upon this point.

The indictment concludes, "against the peace and dignity of the people of the State of Illinois." The 25th section of the 5th article of the constitution provides, that all prosecutions shall be carried on " in the name and by the authority of the people of the State of Illinois;" and concludes, "against the peace and dignity of the same."

We do not think it necessary to comply literally with this provi-

sion. The conclusion is the same in substance as required by the constitution, and within the spirit and meaning of the requisition.

The issue was tried by the court, by agreement of the parties in open court, and this is also assigned for error. We do not doubt the right of the defendant, in cases of misdemeanors, to waive a jury and put himself upon the court for trial. He may waive his right in this respect, and, having done so, cannot assign for error that the court tried the issue. *The People* v. *Scates,* 3 Scam. 351.

*Judgment affirmed.*